415 So.2d 371 (1982)
John A. FAUST and Ingrid Piller
v.
John MENDOZA, et al.
No. 14687.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*372 Dennis R. Whalen, Baton Rouge, for plaintiffs-appellants John A. Faust and Ingrid Piller.
Jack M. Alltmont, Shirley Nassif Kopsa, New Orleans, for defendants-appellants The Sonesta Intern. Hotels Corp. and Maryland Cas. Co.
John Mendoza in pro. per.
Charles J. Willoughby, Asst. City Atty., New Orleans, for defendant-appellee City of New Orleans.
Before LEAR, CARTER and CHIASSON, JJ.
LEAR, Judge.
This suit emanates from an incident in which co-plaintiffs, John A. Faust and Ingrid Piller, were allegedly battered and arrested by a City of New Orleans police officer, John Mendoza, at the Royal Sonesta Hotel in New Orleans, Louisiana. Plaintiffs originally filed this suit seeking damages for personal injuries and malicious prosecution, against Mendoza, the City of New Orleans (hereinafter referred to as "City"), Travelers Insurance Company (hereinafter referred to as "Travelers"), allegedly the City's liability insurer, Sonesta International Hotels Corporation (hereinafter referred to as "Sonesta"), owner of the Royal Sonesta, and United States Fire Insurance Company (hereinafter referred to as "U. S. Fire"), allegedly the liability insurer for Sonesta. Plaintiffs subsequently amended their petition to substitute Maryland Casualty Company (hereinafter referred to as "Maryland") for U. S. Fire as defendant and alleged insurer of Sonesta. Before trial, Travelers was dismissed as a defendant upon its motion for summary judgment and that ruling of the trial court was not appealed. The City and Mendoza jointly filed an exception of venue, which was overruled by the trial court.
Trial on the merits was held on February 12, 1981. At the close of trial, the trial court rendered judgment in favor of Faust in the sum of $3,315.00 and Piller in the sum of $1,578.00, against Mendoza, City, Sonesta, and Maryland, in solido, for the personal injuries sustained by plaintiffs as a result of the battery. The trial court, however, rejected plaintiffs' claim for damages based upon malicious prosecution.
From the judgment of the trial court, plaintiffs perfected a devolutive appeal. Subsequently, Sonesta and Maryland filed a cross appeal. Mendoza and the City did not timely appeal and, therefore, the judgment to the extent it is adverse to them, is now final.
The incident which gave rise to the instant suit occurred in New Orleans on February 9, 1975. On that date, the City of New Orleans was in the midst of its annual celebration of the Mardi Gras holiday. Plaintiffs had traveled together from Baton Rouge to New Orleans on the afternoon of the day in question to join in the festivities. Plaintiffs spent the afternoon and part of the night in New Orleans' French Quarter drinking wine and beer and following parades on foot. The last parade which plaintiffs had been following finished its procession at approximately 10:00 p. m. Faust testified that, at this point, he noticed the ice cream parlor in the Royal Sonesta and, having not had anything to eat all day, he and Piller decided to go in for ice cream.
Once inside the ice cream parlor, plaintiffs got in a line that had queued up to the serving counter. According to Faust, Piller, and Sonia Weaver, one of the workers behind the counter, Faust had his head on *373 the counter, due to his fatigued and intoxicated state. Faust kept his head on the counter and did not move forward when the persons in line in front of him did so. As a result, another of the employees behind the counter requested that Faust move up and place his order. According to the testimony of Weaver, when Faust failed to move up, Mendoza, who had entered the ice cream shop earlier, accosted Faust and told him to move. When Faust failed to move up, Mendoza launched an unprovoked attack upon Faust. This attack culminated in Mendoza's striking Faust upon the forehead with his "billy" club. During the melee, Piller tried to come to Faust's aid and was also struck in the head by Mendoza with his "billy" club.
Faust testified that the blow to his head knocked him unconscious. He said that the next thing he recalled, after being struck by Mendoza, was waking up on the sidewalk in front of the ice cream parlor. Faust stated that he, together with Piller, then went back inside the ice cream parlor to get the ice cream cone which he had ordered. He testified at that point he was attacked again. Faust stated that he later found out from Mendoza that it had been Mendoza who attacked him. He testified that he and Piller then were arrested for assault upon a police officer and brought to Charity Hospital and ultimately central lockup in New Orleans.
Weaver did not recall Faust's being ejected and then coming back inside. Instead, she testified when Faust arose from the floor after being hit, Mendoza then threw him into the glass door causing it to shatter. Both Faust and Piller testified that they had been struck twice with the "billy" club by Mendoza.
Mendoza's version of the incident was sharply divergent from that of plaintiffs and Weaver. He testified that, on the day of the incident, he was employed as a police officer by the City. During the Mardi Gras season, he would work a twelve hour shift for the City. On the day of the incident, his shift was from 11:00 a. m. to 11:00 p. m. His assignment on that day was to help maintain crowd control in the vicinity of the parades. In addition to and after his regular work shift with the police force, during Mardi Gras, Mendoza was employed by Sonesta to maintain order in its ice cream parlor. Mendoza testified that he would begin his second job at 11:00 p. m., immediately after the end of his work day for the City, and would get off work at 3:00 a. m. While on duty at the ice cream parlor, Mendoza would wear his police uniform.
Mendoza testified that on the day in question he finished his assigned police duties of maintaining crowd control in the vicinity of the parades at approximately 10:00 p. m. Since his job with Sonesta began at 11:00 p. m., he decided to go to the ice cream parlor and wait until it was time for him to begin work. He stated that though he was at the ice cream parlor, he was still on duty as a police officer for the City and had not begun his job with Sonesta. Mendoza further testified that he had been at the ice cream parlor for approximately ten minutes when he noticed Faust and Piller walk up to the serving counter. He stated that he heard Faust order an ice cream cone, which order he embellished with an obscene adjective. Mendoza testified that, at this point, he tapped Faust upon the shoulder and admonished him concerning his choice of language. According to Mendoza, Faust then became very hostile and told Mendoza that "he had spent a lot of money in this town and could do as he damn well pleased." Mendoza testified that Faust then struck him in his chest for no apparent reason. Mendoza then grabbed Faust and held him. However, Mendoza stated that Piller then began to physically interfere with him and began to try to get his service revolver. He stated at this point he struck Piller with his "billy" club causing her to fall to the floor. According to Mendoza, Faust then tried to attack him again and he was forced to hit Faust in the head with his night stick. He stated that he then immediately arrested plaintiffs for assault on a police officer and brought them to a police car outside, accidentally breaking the glass door to the ice cream parlor in the process.
*374 The affidavits which Mendoza prepared charging plaintiffs with assault upon a police officer were subsequently amended to charge them with battery.
After a trial on the criminal charges, both Piller and Faust were found not guilty.
On appeal, Sonesta and Maryland seek reversal of the trial court's finding that Sonesta was vicariously liable for the damages sustained by plaintiffs as a result of the battery by Mendoza. Through their appeal, plaintiffs ask this court to reverse the trial court's rejection of their claim for damages based upon malicious prosecution.
Vicarious Liability of Sonesta:
On appeal, Sonesta and Maryland contend that the trial court erred in finding that they were liable for the battery by Mendoza under the doctrine of respondeat superior. They argue that Mendoza was not acting within the scope of his employment with Sonesta because the battery occurred at approximately 10:15 p. m. and it was undisputed that Mendoza was not scheduled to go on duty at the ice cream parlor until 11:00 p. m. The trial court rejected this argument, finding that Mendoza was performing the exact duties for which he was hired by Sonesta at the time of the battery and, therefore, that he was acting within the course and scope of his employment.
Under Louisiana law, an employer is liable for a tort committed by his employee, if at the time, the employee is acting within the scope of his employment. La.Civ.Code, art. 1920; LeBrane v. Lewis, 292 So.2d 216 (La.1974). The proper test for determining whether or not an employee was acting within the scope of his employment in a situation where the tort occurred before or after the employee's normal working hours was recently enunciated by our Supreme Court in Daniels v. Conn, 382 So.2d 945, 948 (La.1980) as follows:
"[T]he inquiry is whether the employee's tortious conduct `was so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests.'" (Citation omitted.)
In the instant case, Mendoza was performing the exact duties for which he was employed by Sonesta, i.e., maintaining order in the ice cream parlor, and at the exact place at which he was employed to perform them. While the tort occurred approximately forty-five minutes prior to the time he was scheduled to go on duty, Mendoza could give no explanation as to why he was at the ice cream parlor at that time. Moreover, forty-five minutes is not so long a period of time as to, by itself, remove Mendoza from the scope of his employment with Sonesta. Under the circumstances, we find that the trial court was not clearly wrong in finding that "the tortious conduct was so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business." See Daniels v. Conn, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Malicious Prosecution:
While the trial court found the plaintiffs were entitled to recover for the personal injuries they sustained as a result of the battery, it rejected their claim for damages based upon malicious prosecution. It is apparent from the trial court's oral reasons that the basis for rejection of that claim is its conclusion that Mendoza acted with probable cause in effecting the arrest and instituting the prosecution by way of affidavit, notwithstanding the fact that plaintiffs were ultimately found not guilty of the charges.
In Hill v. Smith, 399 So.2d 708, this court spelled out the elements of an action for malicious prosecution as follows:
"An action for malicious prosecution lies where there is a concurrence of the following:
"(1) The commencement or continuance of an original criminal or civil judicial proceeding.

*375 "(2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding.
"(3) Its bona fide termination in favor of the present plaintiff.
"(4) The absence of probable cause for such proceeding.
"(5) The presence of malice therein.
"(6) Damage conforming to legal standards resulting to plaintiff.
"Robinson v. Goudchaux's, 307 So.2d 287 (La.1975); Eusant v. Unity Industrial Life Ins. and Sick Benefit Ass'n. of New Orleans, 195 La. 347, 196 So. 554 (1940)."
In the instant case, Mendoza charged plaintiffs, by way of affidavit, with assault upon a police officer. At the time of the incident, assault was defined under Louisiana Revised Statutes 14:36 as follows:
"Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."
The trial court expressly found that Faust provoked the attack by Mendoza and that Piller attempted to physically aid Faust. The basis for the trial court's assessment of damages against defendants was its conclusion that Mendoza had responded with excessive force in defending himself against Faust and Piller and in effecting their arrest. Despite its conclusion that Mendoza acted with excessive force, the trial court obviously found that the initial attacks by Faust and Piller constituted attempted batteries, or assaults. Our review of the entire record reveals a reasonable factual basis for these conclusions and further reflects that they are not clearly wrong. See Arceneaux v. Domingue, supra. Under these circumstances, the trial court's finding that Mendoza had probable cause to institute and pursue the criminal proceedings against plaintiffs is correct. Therefore, the trial court was also correct in rejecting plaintiffs' claims for malicious prosecution. See Hill v. Smith, supra.
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of appeal are to be paid equally by plaintiffs-appellants, John A. Faust and Ingrid Piller, and defendants-appellants, Sonesta International Hotels Corporation and Maryland Casualty Company.
AFFIRMED.