Winston C. SPENCER and Betty Spencer, individually and as assignees of Gordon Tindle and M & G Enterprises, Plaintiffs–Counterclaim–Defendants–Appellants,

v.

ASSURANCE CO. OF AMERICA, Defendant–Counterclaim– Plaintiff–Appellee.

No. 93–2796.

United States Court of Appeals, Eleventh Circuit.

Dec. 8, 1994.

Lefferts L. Mabie, Jr., Robert J. Mayes, Lefferts L. Mabie, III, Louis K. Rosenbloum, Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, PA, Pensacola, FL, Clifford C. Higby, Bryant & Higby, Panama City, FL, for appellants.

Patricia Guilday, Pensacola, FL, Bonita L. Kneeland, Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, FL, for appellee.

Before COX, Circuit Judge, MORGAN, Senior Circuit Judge, and VOLLMER *, District Judge.

MORGAN, Senior Circuit Judge:

Appellants Winston and Betty Spencer, as assignees of Gordon Tindle, d/b/a M & G Enterprises (M & G), appeal an order of the United States District Court for the Northern District of Florida granting summary judgment for Assurance Company of America (Assurance). This order effectively denied the Spencers' claim for indemnification under assignor's general liability insurance policy with Assurance. After reviewing the record, we find that the Assurance policy issued to Gordon Tindle, d/b/a M & G, provides no coverage for the underlying incident at issue in this case. We, therefore, agree

* Honorable Richard W. Vollmer, Jr., U.S. District Judge for the Southern District of Alabama, sit- ting by designation.

that Assurance owes no duty to indemnify and AFFIRM the holding of the district court.

## I. FACTUAL BACKGROUND

At the outset of this case, Gordon Tindle owned and operated a business known as M & G Enterprises, which engaged in road paving and land clearing activities. On November 26, 1990, Curtis Reed, an employee of M & G and the brother of Tindle's ex-wife Margie, was involved in an altercation with appellant Winston Spencer. Both Gordon and Margie Tindle were present during this altercation, as was Roberta Michael, a business rival of M & G.

The fight initially involved only the two women (Roberta Michael and Margie Tindle), and was apparently spawned by a racial slur that Michael had made against Tindle approximately one month prior. Spencer became involved in the altercation when he attempted to separate the two women and stop the fight. Apparently misinterpreting Spencer's motive as one of aggression toward his sister Margie, Reed also joined the fight. The record indicates that Reed struck Spencer numerous times in the head and body and continued to strike him even after Spencer had fallen to the ground and stopped moving. Gordon Tindle stood by and watched this attack[1]. As a result of the beating, Spencer suffered two skull fractures and permanent neurological damage.

The Spencers subsequently brought suit for damages in Florida's circuit court, naming as defendants M & G, Curtis Reed, Gordon Tindle, Margie Tindle and Roberta Michael.[2] Gordon Tindle called upon his insurer, Assurance Company of America, to defend in the action. Assurance, however, refused this request on the grounds that the incident fell outside the policy's coverage. Tindle and the Spencers eventually reached a settlement whereby Tindle, d/b/a M & G, stipulated to a judgment against himself and his company in a sum exceeding two million dollars. As part of the agreement, Tindle assigned to the Spencers his cause of action against Assurance for wrongfully failing to defend and indemnify. In return, the Spencers agreed to forebear from executing on the judgment against Tindle for a period of six years or until the conclusion of the ensuing litigation against Assurance, whichever occurred later.

Following this settlement, the Spencers, acting as assignees of Tindle and M & G, filed the underlying action against Assurance[3]. The complaint alleged that Tindle's employee was acting within the scope of his employment when the altercation with Spencer occurred, that the altercation was covered under the policy and, therefore, that Assurance had breached its duty to defend Tindle in the action. Accordingly, the Spencers contended that Assurance was required to indemnify Tindle in the amount of the full settlement agreed upon by the parties and that the Spencers, as assignees of Tindle's rights under the policy, were now entitled to that sum.

In response to the Spencers' complaint, Assurance moved for summary judgment, arguing that it owed no duty to indemnify because Reed's intentional acts against Spencer were not covered by the policy. The district court agreed with Assurance on this issue and found as a matter of law that although Assurance should have defended the underlying action, Assurance owed no duty to indemnify. We now review the district court's grant of summary judgment de

---

**1.** Testimony in a deposition by Reed indicates that Tindle may have actually participated in beating Spencer or at least encouraged Reed to continue the beating. Tindle denies ever striking Spencer or instructing Reed to do so.

**2.** The state court complaint alleged both intentional and negligent assault and battery by Reed in the furtherance and course and scope of his employment with M & G. The complaint also

alleged negligence on the part of both Gordon and Margie Tindle for aiding, abetting and counselling the striking of Spencer by Reed and thereafter ratifying and condoning Reed's conduct in furtherance of the business of M & G.

**3.** Appellants filed the original suit against Assurance in Florida's circuit court; however, Assurance subsequently removed the case to federal court upon being served with the complaint.

novo.[4] *See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190, 198 (1991) (Courts of appeals must review de novo district courts' state-law determinations.).

## II. DISCUSSION

Appellants advance two main theories on appeal for recovery from Assurance. The Spencers first contend that because Assurance failed to defend Tindle in the underlying action where coverage issues could have been raised, Assurance was estopped to deny coverage at the later proceeding before the district court. In the alternative, Appellants argue that the district court erred in finding as a matter of law that Tindle's policy offered no coverage for the injuries sustained by Spencer as a result of Reed's attack. We address each of these arguments in turn.

A. *Was Assurance estopped from denying coverage before the district court?*

■ As a preliminary matter, Florida law clearly states that liability of an insurer depends upon whether the insured's claim is within the coverage of the policy. This remains true even when the insurer has unjustifiably failed to defend its insured in the underlying action. *See Steil v. Florida Physicians' Insurance Reciprocal,* 448 So.2d 589, 592 (Fla. 2d DCA 1984); *Florida Farm Bureau Mut. Ins. Co. v. Rice,* 393 So.2d 552 (Fla. 1st DCA 1980); *Central Nat'l Ins. Co. v. Gonzalez,* 295 So.2d 694, 696 (Fla. 3d DCA 1974). A determination of coverage, therefore, is a condition precedent to any recovery against an insurer. *See Steil,* 448 So.2d at 592.

■ Appellants urge this court to hold that because coverage issues might have been raised by Assurance at the circuit court proceeding had Assurance properly defended there, Assurance was estopped to raise those same issues later. We disagree. The coverage issues which Assurance raised in the district court were not litigated in the circuit court action, nor were they necessarily determined by the circuit court judgment. Rather, the circuit court simply approved the stipulation to judgment agreed upon by Tindle and the Spencers, finding that Tindle's liability for the incident was "certain." In approving the stipulation, the circuit court neither addressed nor determined Tindle's coverage under the Assurance policy. We find no authority to extend the estoppel principle to preclude the litigation of issues not necessarily determined by a judgment issued by a previous court.[5] Accordingly, we hold that Assurance was not estopped to deny coverage for the altercation before the district court.

B. *Did the district court correctly conclude that the Assurance policy, as a matter of law, provided no coverage for the incident between Reed and Spencer?*

Appellants alternatively argue that even if Assurance was not estopped to deny coverage, the district court incorrectly determined as a matter of law that this incident was outside the scope of the policy's coverage. Appellants contend that the facts of this case were sufficient to create at least a jury question as to coverage and, therefore, that a decision on summary judgment was precluded. After reviewing the terms of the policy, however, we find that the district court's conclusion as to the coverage issue was correct and that summary judgment, in fact, was warranted.

We find that Reed was not an "insured" under the terms of the policy. The policy provides coverage for Tindle's M & G employees, "but only for acts within the scope of their employment" with M & G. Our reading of the record supports the district court's finding that Reed was acting outside the

---

4. Because neither appellant nor appellee challenge the district court's holding regarding Assurance's duty to defend, we review only the indemnification issue.

5. As this Circuit explained in construing the analogous estoppel principle of Georgia law, "[i]f the insurer with an option to defend chooses to remain aloof from [the earlier] litigation, it is estopped only as to factual matters essential to the judgment rendered in the first suit, and does not waive any legal defenses it may have as to its liability on the policy." *Eason v. Weaver,* 557 F.2d 1202, 1206 (5th Cir.1977).

scope of his employment when he attacked Spencer.

■ In order for an employee's conduct to be considered "within the scope of his employment," Florida law requires that the conduct (1) must have been the kind for which the employee was employed to perform; (2) must have occurred within the time and space limits of his employment; and (3) must have been activated at least in part by a purpose to serve the employment. *Morrison Motor Co. v. Manheim Services Corp.*, 346 So.2d 102 (Fla. 2d DCA 1977). Reed's intentional battery of Spencer does not meet this three-part test.

■ Reed was employed by Tindle to perform road-paving activities for M & G, not to batter individuals. We recognize that under special circumstances, an employee's intentional battery of another may be said to have occurred within the employee's scope of employment. *See, e.g., Forster v. Red Top Sedan Service, Inc.*, 257 So.2d 95 (Fla. 3d DCA 1972) (directed verdict in favor of employer reversed where employee bus driver forced plaintiff's car off the road and then assaulted and battered the car's occupants after plaintiff allegedly delayed the employee from performing his job-related duties); *Columbia by the Sea, Inc. v. Petty*, 157 So.2d 190 (Fla. 2d DCA 1963) (jury question created as to scope of employment question when maitre d' struck a customer after customer failed to pay his bill and called maitre d' a "bastard"). However, we find that this case lacks a sufficient nexus between the employee's job and his battery of another to raise even a jury question as to the scope of employment issue.

■ Reed's own testimony during his deposition indicates that his attack on Spencer was based on a purely personal motivation—to protect his sister from what he perceived to be an immediate threat from Spencer. When an employee's battery of another is undertaken for reasons that are purely personal to an employee, summary judgment for the employer is appropriate as a matter of law. *DeJesus v. Jefferson Stores, Inc.*, 383 So.2d 274 (Fla. 3d DCA 1980). Although appellants argue that there is at least a jury question as to whether the fight between Margie Tindle and Roberta Michael was based on a business dispute rather than a racial slur, Reed's testimony as to why he became involved in the fight is undisputed.[6] He was protecting the interests of his sister, not those of his employer. In no way was Reed furthering the business of M & G. Accordingly, we agree with the district court's conclusion that Reed was not an "insured" for purposes of the Assurance policy. We find, therefore, that the Assurance policy offered no coverage for Reed's intentional battery of Spencer.[7]

### III. CONCLUSION

After reviewing the record, we find that Assurance was neither estopped from denying coverage before the district court, nor was it required to indemnify the insured under the policy. Accordingly, appellants have no legal right to collect from Assurance the amount of the agreed upon settlement

---

6. In his deposition, Reed was asked why he struck Spencer. He testified that he saw Spencer hit his sister Margie in the back of the head. In his view, Reed testified that it did not look like Spencer was merely trying to separate the two women. Reed's testimony continued:

Q: As soon as he hit your sister, was it your intention to stop him from hitting your sister so he wouldn't hurt her anymore?
A: Right.
Q: You were trying to protect your sister?
A: Right. And if I had it to do over, I'd do it again.

Reed later testified that he heard Tindle instructing him to hit Spencer again during the fight and that he was following Tindle's instructions. However, Reed also testified that despite anything said to him by Tindle, he would not have stopped hitting Spencer. Reed stated, "I probably would have kept on hitting [Spencer] as long as he was standing."

7. Appellants raise the additional argument that a jury question was created as to coverage based on Gordon Tindle's alleged participation in, or encouragement of, Reed's attack on Spencer. However, the policy only covered Tindle with respect to "the conduct of a business." We find that any participation or encouragement by Tindle did not arise out of the conduct of a business. Moreover, we agree with the district court that as a matter of law the policy's intentional acts exclusion, which precluded coverage for bodily injury "expected or intended from the standpoint of the insured," would prevent coverage.

between themselves and the insured. We therefore AFFIRM the holding of the district court.