673 So.2d 994 (1996)
Amy Elizabeth BAUMEISTER
v.
Loyce PLUNKETT, Humana, Inc. d/b/a Humana Hospital-Brentwood, and Health Care Indemnity.
No. 95-C-2270.
Supreme Court of Louisiana.
May 21, 1996.
Rehearing Denied June 28, 1996.
*995 Charles W. Salley, Frank Meredith Walker, Jr., James Alex Mijalis, Lunn, Irion, Johnson, Salley & Carlisle, Shreveport, for Applicant.
Ander Michael Boggs, Michael David Cox, M.D., Bossier City, John S. Stephens, Coushatta, for Respondent.
Thomas Allen Usry, Craig Edmond Frosch, Metairie, for Louisiana Sheriff's Association, Amicus Curiae.
Lawrence S. Kullman, New Orleans, for Louisiana Trial Lawyers Association, Amicus Curiae.
CALOGERO, Chief Justice.[*]
We granted writs in this case to determine whether the court of appeal correctly held a hospital vicariously liable for the sexual battery committed by one of its supervisors upon a co-employee during working hours on the hospital's premises.
Under the facts of this case and for the reasons set forth below, we reverse. On the relevant uncontroverted facts in the record, we conclude as a matter of law that Humana Hospital-Brentwood in Shreveport, Louisiana, is not vicariously liable for the acts of its employee, Loyce Plunkett, which occurred on December 27, 1987.
Amy Baumeister, a clinical technician, and Plunkett, the nursing supervisor that night, worked the 3:00 p.m. to 11:00 p.m. shift at Humana. According to Baumeister, while on break she obtained a coke from the basement, went to the second floor nurses' lounge, used the bathroom, picked up a magazine, sat down in the corner, and began reading. Shortly thereafter, Plunkett entered the room, turned off the overhead light, and jumped on top of plaintiff. She testified that Plunkett put one hand between her legs and forced her upward and backward against the wall, while twisting her breast with his other hand and "mashing" his teeth into her face. After pushing Plunkett off, Baumeister left the room and returned to work. She picked up her patients at the gym and accompained *996 them back to the third floor. She then telephoned her regular supervisor, Dana Wilson, at home and told her what had happened.
Plunkett testified that Baumeister entered the supervisor's office and made advances toward him. According to Plunkett, he told Baumeister that she should return to her unit, and she left. The following day, Baumeister's boyfriend telephoned Plunkett and accused him of attacking Baumeister. Plunkett's direct testimony, however, was not consistent with a statement written by him shortly after the incident.
Baumeister filed suit against Plunkett and Humana, alleging that "the fault, negligence and strict liability of ... Plunkett is imputed to Humana ... as a result of the employee-employer relationship." The district court rendered judgment against defendants Plunkett and Humana, and awarded plaintiff damages in the amount of $265,735.50.
Humana appealed.[1] The court of appeal affirmed, accepting plaintiff's version of the events over that of defendant Plunkett's:
Mr. Plunkett's testimony of the events was incredible in the strictest sense of the word. He was not able to recall events which clearly he should have been able to relate, and the court concludes that his testimony was not truthful and is not worthy of belief.
Additionally, the court of appeal held that, on the record presented, the district court was not clearly wrong in finding Humana vicariously liable for Plunkett's sexual battery because he "was serving in a supervisory capacity, which, he testified, required him to rove the entire hospital." Baumeister v. Plunkett, 94-27185 (La.App. 2d Cir. 8/23/95), 661 So.2d 510, 516, writ granted, 95-2270 (La. 1/5/96), 666 So.2d 310. "He had supervisory authority over Baumeister, and their employment placed both of them at the site of the incident." Id. "Both Baumeister and Plunkett were in the course and scope of their employment." Id.
The law in this area is clear that an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment. Orgeron v. McDonald, 93-1353 (La. 7/5/94), 639 So.2d 224, 226. The course of employment test refers to time and place. Benoit v. Capitol Manufacturing Co., 617 So.2d 477, 479 (La.1993). The scope of employment test examines the employment-related risk of injury. Id.
According to Louisiana Civil Code article 2320, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." In fact, this Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the "tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." Barto v. Franchise Enterprises, Inc., 588 So.2d 1353, 1356 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (1992) (quoting LeBrane v. Lewis, 292 So.2d 216, 217, 218 (La.1974)).
"An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours." Scott v. Commercial Union Ins. Co., 415 So.2d 327, 329 (La.App. 2d Cir.1982) (citing Bradley v. Humble Oil & Refining Co., 163 So.2d 180 (La.App. 4th Cir.1964)). "Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." Id.
More specifically, our LeBrane v. Lewis decision considered the following factors in holding an employer liable for a supervisor's actions in stabbing his fellow employee:
(1) whether the tortious act was primarily employment rooted;

*997 (2) whether the violence was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
292 So.2d at 218. This does not mean that all four of these factors must be met before liability may be found. Miller v. Keating. 349 So.2d 265, 268 (La.1977). But as we noted above in Scott, an employer is not vicariously liable merely because his employee commits an intentional tort on the employer's premises during working hours. 415 So.2d at 329. See also Tampke v. Findley Adhesives, Inc., 489 So.2d 299 (La.App. 4th Cir.), writ denied, 491 So.2d 24 (1986); McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1321 (1985). The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment. Scott, 415 So.2d at 329.
In LeBrane, the leading case involving an employer's liability for intentional torts committed by its employees, a dispute arose between a kitchen supervisor and a kitchen helper. 292 So.2d at 217. After several warnings, the plaintiff, LeBrane. refused to leave the premises, so his supervisor, who had the authority to do so, fired him. Id. LeBrane and the supervisor began arguing. On the way out of the building, the supervisor stabbed LeBrane. Id.
The court of appeal in LeBrane concluded that at the time of the stabbing, the dispute was a purely personal matter. 280 So.2d 572, 580 (La.App. 1st Cir.1973), modified by, 292 So.2d at 216. This Court, however, reversed, finding the dispute was "primarily employment-rooted." LeBrane, 292 So.2d at 218. The fight was reasonably incidental to the performance of the supervisor's duties in connection which firing the recalcitrant employee and removing him from the business premises. Id. "It occurred on the employment premises and during the hours of employment." Id.
In short, the tortious conduct of the supervisor was so closely connected in time, place, and causation to his employmentduties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. It can thus be regarded as within the scope of the supervisor's employment, so that his employer is liable in tort to third persons injured thereby.
Id. The LeBrane court expressly noted that the "employee's tortious conduct occurred while the employee was at least partly actuated by his purpose of acting for his employer in the discharge of the recalcitrant coemployee, and it was reasonably consequent upon or incident to his performance of his employment function of hiring and firing subemployees." Id. at 219.
Similarly, in Faust v. Mendoza, 415 So.2d 371 (La.App. 1st Cir.1982), a security guard at a hotel's ice cream parlor allegedly committed a battery upon a customer. The court found that the dispute stemmed from the customer's disorderly conduct. Faust, 415 So.2d at 375. Because the security guard had been hired to keep order in the hotel's ice cream parlor, the altercation was obviously "employment-rooted" so as to be regarded as a risk of harm "fairly attributable to the employer's business." Id. at 374.
On the other hand, in Scott v. Commercial Union Ins. Co., 415 So.2d at 329, the employee mechanic struck a customer in the face while the two were discussing a personal matter. The court found no liability on the employer's part, because even though the tort was committed at the employer's place of business and during working hours, the dispute was strictly personal in nature and did not arise out of employment. Id.
In another relevant case, McClain v. Holmes, 460 So.2d at 684, the court of appeal refused to find the employer vicariously responsible for its employee's acts because the tort committed by the employee, McClain, was not employment-related. While making deliveries for his employer, McClain was involved in altercation with police officers. Id. at 681. At the moment of the battery, McClain, unlike the employees in LeBrane *998 and Faust, was not acting in furtherance of his employer's interest and the dispute was not related to his duties as a driver. Id. Instead, like the employee in Scott, McClain's conduct was motivated by "purely personal considerations entirely extraneous to the employer's interest," even though the incident occurred while the employee was working. Id.
In the cases above, except for Scott, the torts committed by the employees were also ones that could be described in LeBrane as a "risk of harm fairly attributable to the employer's business." McClain, 460 So.2d at 684.
A kitchen supervisor may foreseeably become involved in a dispute with a recalcitrant underling [while discharging the employee and escorting him off the premises]. It is quite foreseeable security guards and doormen may fight with unruly patrons. But the possibility a van driver will ignore the orders of a policeman, become irritated when the policeman issues a citation and, finally, commit a battery upon the policeman while resisting a lawful arrest, is simply not a risk fairly attributable to the employer's business.
Id.
Although not binding on this Court, we find some other states' cases instructive. In Hunter v. Countryside Association For The Handicapped, Inc., 710 F.Supp. 233, 239 (N.D.Ill.1989), a case involving sexual assault, the court proclaimed that in order to hold an employer liable for the intentional torts of its employees under respondeat superior, plaintiff must show that the torts were committed in furtherance of the employment. See Hunter v. Allis-Chalmers Corp., Engine Division, 797 F.2d 1417, 1421 (7th Cir.1986). "The tortfeasing employee must think, however misguidedly, that he is doing the employer's business in committing the wrong." Id. at 1421-22. In Hunter, defendant supervisor's alleged sexual assault can in no way be interpreted as furthering Countryside's business. 710 F.Supp. at 239.
Also, the United States Eleventh Circuit Court of Appeals in Spencer v. Assurance Co. of America, 39 F.3d 1146, 1150 (11th Cir.1994), held that the case before it lacked a sufficient nexus between the employee's job and his battery of another. Defendant's employee and plaintiff were involved in an altercation. Id. Defendant was hired for roadpaving activities, not to batter anyone. Id. at 1150. Employee's own testimony indicates that his attack on plaintiff was based on a purely personal motivation which was to protect his sister. Id.
Before turning to the facts in the case at hand, we note that the district court's determination that a particular act is within the course and scope of employment for purposes of vicarious liability is a factual finding governed by the manifest error rule. Ermert v. Hartford Insurance Co., 559 So.2d 467, 478 (La.1990). "The application of this standard of review mandates that this court can only reverse a lower court's factual findings when (1) the record reflects that a reasonable factual basis does not exist for the finding of the trial court and (2) the record establishes that the finding is clearly wrong." Emoakemeh v. Southern University, 94-1194 (La.App. 1st Cir. 4/7/95), 654 So.2d 474, 477-78 (citing Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993)).
Applying the foregoing to the case in question, we examine the record and assume facts most favorable to the plaintiff. Furthermore, because we have no problem with the district court's recitation of the facts, we present the facts as found by him. Employees at Humana, like plaintiff, did not have to ask to take a break. They merely had to find someone to replace them while on break. Employees were permitted two fifteen minute breaks and one thirty minute break per eight hour shift. On December 27, 1987, plaintiff called another floor and asked if there was an available clinical technician to take her patients to the gym while she took a break. A substitute thereupon filled in for her.
Plaintiff chose to take her break on the second floor even though she was working on the third floor. Plaintiff stated that "ideally I would have taken it when the cafeteria was open and I would have gotten a meal," but the cafeteria was already closed. Hence, she *999 purchased a drink and returned to the lounge on the second floor. For their breaks, too, other employees used this lounge, as well as other lounges on each floor. The nurses' lounges were also used by nursing supervisors as offices. In fact, there was a desk in the lounge on the second floor.
Upon entering the lounge, Plunkett did not say anything to plaintiff. He turned off the light, approached her, and forced himself on top of her. Plaintiff pushed him off and exited the room. Immediately after the incident, plaintiff went to the gym to pick up her patients and brought them back to the third floor to get them ready for bed.
According to Plunkett on cross-examination, supervisors did not work out of the break room behind the nurses' station on the second floor. The supervisors had their own offices and that is where a supervisor would do his or her work. He stressed that the incident occurred in the supervisor's office, not in the lounge as stated by plaintiff. Plunkett added that he normally only "casually" passed by the lounge to see what was happening. Irrespective of whose version we accept on this issue, the testimony established that Plunkett entered the room and forced himself on top of plaintiff without saying a word.
We must analyze the LeBrane factors to determine Humana's liability. As mentioned previously, the LeBrane factors are as follows:
(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidential to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
292 So.2d at 218.
Initially, we find that plaintiff has established the last two LeBrane factors, that is, the assault occurred during the course of employment, because Plunkett assaulted plaintiff on the hospital's premises during working hours. Both employees were working the 3:00 p.m. to 11:00 p.m. shift, and the assault occurred around 6:00 p.m. in the second floor nurses' lounge.
Neither the first nor second LeBrane factors, however, existed in this case. Regarding the incident to performance of duties factor, a supervisor may foreseeably become involved in a dispute with a "recalcitrant underling." LeBrane, 292 So.2d at 217. It is also quite foreseeable and reasonably incidental to the employees duties that security guards and doormen may fight with unruly patrons. See Faust, 415 So.2d at 371. The likelihood, on the other hand, that a nursing supervisor will find an employee alone in the nurses' lounge and sexually assault her is simply not a risk fairly attributable to the performance of the supervisor's duties. A nursing supervisor's responsibilities do not include sexually oriented physical contact with a co-employee. And it is not at all foreseeable from the perspective of the hospital that such conduct will take place on hospital premises during working hours.[2] We conclude that Plunkett's actions were not reasonably incidental to the performance of his employment duties.
Similarly, we do not find that plaintiff established the final LeBrane factor, that Plunkett's tortious act was primarily employment rooted.
The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service.
Ermert, 559 So.2d at 476-77. In our case, serving the master's business did not actuate the servant at all, much less to any appreciable extent. This is not a case where a supervisor's *1000 performance of his duties, such as disciplining or threatening to discipline a subordinate employee, leads to an intentional tort. Under the specific facts of this case Plunkett's sexual assault was entirely extraneous to his employer's interests.
We do not mean to state, however, that all sexual acts are of a personal nature and might not sometimes be employment rooted. "A blanket rule holding all sexual attacks outside the scope of employment as a matter of law because they satisfy the perpetrators' personal desires would draw an unprincipled distinction between such assaults and other types of crimes which employees may commit in response to other personal motivations, such as anger or financial pressures." Stropes v. Heritage House Childrens Center, 547 N.E.2d 244 (Ind.1989). We note also that we are not espousing a "motivation" test which focuses solely on whether the tortfeasor's act was motivated by a desire to further his personal interests.
But, given the facts surrounding the sexual battery in this case, we find that Plunkett's actions did not further Humana's business and were not incidental to the performance of his supervisory duties, not even in a minor respect. Plunkett did not order plaintiff into the lounge or threaten plaintiff with the loss of her job if she did not respond to his sexual advances. In fact, plaintiff testified that Plunkett did not say anything when he entered the lounge and attacked her. Furthermore, even though the court of appeal recited that Plunkett had supervisory authority over plaintiff and that this authority "allowed him to rove the hospital," these facts do not satisfy the first or second LeBrane factors. Hence, we hold that as a matter of law the uncontroverted facts do not support a finding of vicarious liability. The lower courts erroneously applied the LeBrane factors.,
In sum, there is no magical formula to establish vicarious liability for intentional torts committed by employees. We do hold, however, that as a matter of law an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. See Scott, 415 So.2d at 329. There must additionally be at least some evidence that the intentional act was reasonably incidental to the performance of the employee's duties or that the tortious act was primarily employment rooted.
For these reasons we conclude that the district court and the court of appeal erred in finding Humana vicariously liable for the acts of its employee in this case.
The judgments of the courts below are therefore reversed insofar as they cast the defendant Humana Hospital-Brentwood in damages. Judgment is rendered in favor of defendant Humana and against plaintiff Amy Baumeister, dismissing her petition at her costs.
REVERSED AND RENDERED.
JOHNSON, J., dissents.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appleas for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part 2, § 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] Plunkett's appeal was dismissed in the court of appeal for not filing his brief timely.
[2] Similar conduct where a hospital's patient is the victim is perhaps sufficiently different to warrant a different result. See Samuels v. Southern Baptist Hospital, 594 So.2d 571 (La.App. 4th Cir. 1992), writ denied, 599 So.2d 316 (1992) (Hospital held liable for rape of patient by nursing assistant because taking care of patient's wellbeing was part of employee's duties and rape was reasonably incidental to the performance of these duties, even though act was unauthorized).