JjLEON A. CANNIZZARO, JR., Judge.
This case involves a suit by Tracy San-born against Carl Chaisson[1], Methodist Behavioral Resources Partnership (the “Methodist Partnership”), Behavioral Services, Inc., Jules S. Deutseh, M.D., and the Estate of Stanley Roskind, M.D. Ms. San-born alleged that Mr. Chaisson, a counsel- or who conducted substance abuse classes at the Methodist Counseling Center (the “Center”), sexually assaulted her. The trial court rendered judgment against Mr. Chaisson but dismissed the case against the Methodist Partnership.[2] Ms. Sanborn is appealing the dismissal of the case against this defendant.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
Ms. Sanborn was a client of the Center. The Methodist Partnership owned and operated the Center, which provided substance abuse counseling, treatment, and drug testing for persons convicted of federal crimes involving illegal drugs. The counseling was provided in connection with a federal government program. \9i All of the clients at the Center had been referred to the Center by the federal probation office for the United States District Court for the Eastern District of Louisiana, and all of the clients were either on probation or were under pre-trial supervision by the federal court system.
Mr. Chaisson was a substance and alcohol abuse counselor, who had a contract to provide substance abuse counseling in a classroom setting at the Center. Mr. Chaisson also assisted at the Center with meetings of Alcoholics Anonymous (“AA”) and Narcotics Anonymous (“NA”), self-help programs for recovering alcoholics and addicts.
As a condition of her probation in connection with a federal drug conviction, Ms. Sanborn was required to attend counseling at the Center. She was required to attend daily classes for substance abusers, and these classes were taught by Mr. Chaisson. Ms. Sanborn was also required to attend individual counseling sessions with Judy Baker, a social worker, who was employed by the Center. Additionally, Ms. Sanborn *301 voluntarily attended AA and NA meetings that were held at the Center.
In the instant suit, Ms. Sanborn alleged that while acting in the course and scope of his employment at the Center, Mr. Chaisson sexually assaulted her, causing a relapse in her recovery from drug addiction. Ms. Sanborn further alleged that Mr. Chaisson was hable for the damages that resulted from the relapse. She also claimed that the Methodist Partnership, as Mr. Chaisson’s employer, was vicariously liable for these same damages. Additionally, Ms. Sanborn alleged that because it should have known of Mr. Chaisson’s propensity to behave inappropriately with female clients, Methodist Partnership was negligent in hiring and supervising him. Therefore, she claimed that Methodist Partnership was also |3directly liable for the damages she suffered from having been sexually assaulted by Mr. Chaisson.
Ms. Sanborn alleged that at the conclusion of an evening meeting of the NA group, Mr. Chaisson asked her if she wanted to go out onto a balcony at the Center and smoke a cigarette. At the trial Ms. Sanborn testified that it was common for both counselors and clients to smoke cigarettes on the balcony during their breaks. According to Ms. Sanborn’s testimony, she spent two or three minutes smoking a cigarette on the balcony on the evening of the incident. As she was walking back into the Center from the balcony, Mr. Chaisson grabbed her and kissed her forcefully. When she tried to walk away, Mr. Chaisson grabbed Ms. Sanborn again and “reached and grabbed” between her legs.
Immediately after.the alleged incident, Ms. Sanborn left the Center and went home. After she got home, Mr. Chaisson telephoned her. Ms. Sanborn testified that “Carl called me to say, you know, I hope what had happened to night [sic] didn’t affect your recovery and I hope that you continue to come- to the meetings and in the next breath says so, how was it, and I hung up the phone.” Ms. Sanborn testified that she “took the phone off the hook so he wouldn’t call me back, because if he had the nerve to call me the first time, he was going to call me back.”
Ms. Sanborn alleged that because of the incident, she stopped attending all but the mandatory sessions at the Center, and she arranged her counseling schedule to minimize her contacts with Mr. Chaisson. She did not report the incident to anyone at the Center, because she was afraid that her account of the incident “was going to be turned around and they were going to put me in jail.” According to Ms. San-born’s testimony, the only reason the Center became aware of the incident wasl4that she was forced to divulge what happened to Ms.-Baker, the social worker who conducted Ms. Sanborn’s required individual counseling sessions.
Ms. Sanborn testified that Ms. Baker called her at work one day and told, her that she needed to come to the Center for a meeting. When she arrived for the meeting, Ms. Sanborn was confronted by Ms. Baker, another social worker at the Center, and a third person. Ms. Sanborn was told that there had been a major change in her personality, that she had stopped attending the NA and AA meetings, and that she was no longer responding to the recovery process. Ms. Sanborn stated that she was also told that “we are going to sit here and discuss what is going on and you’re not going to leave this office until you spit it out.” After approximately one half of an hour of interrogation, Ms. Sanborn finally told the people at1 the meeting about the sexual assault by Mr. Chaisson.
After the meeting, Mr. Chaisson was asked to meet with Ms. Baker regarding *302 the alleged incident. Mr. Chaisson’s version of the incident was completely different from Ms. Sanborn’s version. According to Mr. Chaisson, on the evening of the incident, Ms. Sanborn had come to the AA and NA meetings wearing inappropriate attire that was very distracting to the other people at the meetings. Mr. Chaisson testified at trial that Ms. Sanborn had come out onto the balcony at the Center where he was smoking a cigarette and had given him a hug, a common and innocent occurrence among recovering addicts and their counselors. He then took that opportunity to mention to Ms. Sanborn that she needed to wear appropriate attire to the Center, and this angered Ms. Sanborn. Mr. Chaisson testified that he telephoned her at home that night to make certain that she was not unduly upset by his advice regarding her attire. Mr. Chaisson vehemently denied kissing, grabbing, or otherwise inappropriately touching Ms. Sanborn.
IsAfter Ms. Baker learned of the alleged incident from Ms. Sanborn, she discussed it with her supervisor at the Center, and Mr. Chaisson was ultimately fired from his job. At trial Ms. Baker testified that although Mr. Chaisson was fired, he was not fired for a sexual assault, which Ms. Baker did not believe occurred. Instead, he was fired for showing poor judgment in the manner in which he advised Ms. Sanborn about her attire.
Ms. Sanborn testified at trial that although she ultimately completed her counseling at another treatment facility and that she completed her probation for her drug conviction, she began using drugs again after the alleged incident. After she tested positive for drugs, her probation officer was notified, her probation was extended, and she was required to serve six months of house arrest. She claims that the alleged incident hindered her recovery process and caused her damages.
Ms. Sanborn also claimed that the Methodist Partnership was liable for the damages she suffered, because it had reason to know of Mr. Chaisson’s propensity for exhibiting inappropriate behavior with female clients. She claimed that when Mr. Chaisson was hired to work at the Center, the Methodist Partnership was aware of an incident at West Jefferson Medical Center (“West Jefferson”), a hospital where Mr. Chaisson was formerly employed, that led to his firing at that facility. At trial Mr. Chaisson testified that he was not fired from his job at West Jefferson. Instead, Mr. Chaisson stated that he resigned. Mr. Chaisson testified that a former client, who was a female, was having problems and that he had invited her to have lunch with him to discuss her problems. When he learned that it was against the hospital’s policy for a counselor to meet with a former client outside of the treatment setting, he no longer wanted to work for the hospital, and he resigned from his position.
1 fiThere was no evidence at the trial that anything inappropriate occurred at the lunch with the former client. Further, there was no evidence of any kind that Mr. Chaisson had ever been accused of any sexual improprieties with any of his clients other than Ms. Sanborn. In fact, the testimony showed that Mr. Chaisson was very dedicated to his work and that he had enjoyed a reputation as an excellent counselor.
After the trial, which was conducted without a jury, the trial court judge found that Mr. Chaisson had, in fact, sexually assaulted Ms. Sanborn, and she rendered a judgment against him, individually, in the amount of $15,000. The trial court judge did not, however, find any vicarious liability or other fault on the part of the Meth *303 odist Partnership, and she dismissed the case against it. Ms. Sanborn is now appealing that dismissal.[3]
DISCUSSION
Standard of Review
In Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court stated that it is well settled that an appellate court may set aside a factual finding of a trial court or a jury only where the finding was based on a “manifest error” or was “clearly wrong”. Id. at 844. Further, where there is conflict in the testimony, a trial court’s or a jury’s reasonable evaluations of credibility and reasonable inference of fact should not be disturbed on appeal, even though the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court or jury. Id. Finally, where there are two permissible views of the evidence, the trial court’s or jury’s choice between them cannot be manifestly |7erroneous or clearly wrong. Id. See also Harvey v. Cole, 2000-1849 (La.App. 4 Cir. 1/23/02), 808 So.2d 771.
In Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, the Louisiana Supreme Court expressly stated that “we note that the district court’s determination that a particular act is within the course and scope of employment for purposes of vicarious liability is a factual finding governed by the manifest error rule.” 95-2270, p. 7, 673 So.2d at 998. In the instant case, if the record reflects a reasonable factual basis for the trial court’s determination and does not establish that the trial court’s finding is clearly wrong or manifestly erroneous, this Court must defer to the trial court’s finding that Mr. Chaisson was not acting within the course and scope of his employment when he sexually assaulted Ms. Sanborn.
Vicarious Liability
La. Civil Code art. 2320 provides that “employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” Article 2320 further provides that “responsibility only attaches, when the ... employers ... might have prevented the act which caused the damages, and have not done it.”
Ms. Sanborn has argued that Mr. Chais-son was acting within the course and scope of his employment when he assaulted her and that it was reversible error for the trial court to have held otherwise. If Mr. Chaisson were acting within the course and scope of his employment, then his employer might be liable for his actions under La. Civil Code art. 2320. Ms. San-born relies on the holding in Applewhite v. City of Baton Rouge, 380 So.2d 119 (La.App. 1st Cir.1979), to support her argument.
lain the Applewhite case, the plaintiff was walking with two friends when the group was stopped by a City of Baton Rouge police officer, who was in uniform, on duty, and traveling in a police K-9 unit. The police officer told the group that they were going to be arrested for vagrancy if they remained on the street. The three companions began hurrying to their destination, a friend’s house several blocks away. After they had walked a few more blocks, they were again stopped by the police officer, who ordered the plaintiff to get into his police vehicle, after he had flipped a coin to determine whom he would arrest. After the plaintiff entered the police vehicle, the police officer drove her to a stadium where he raped and sexually assaulted her.
*304 The court in Applewhite found that the police officer was acting within the scope and course of his employment when he assaulted the plaintiff. The court reasoned that “where it is found that a law enforcement officer has abused the ‘apparent authority’ given such persons to act in the public interest, their employers have been required to respond in damages.” 380 So.2d at 122. The court further stated that “[t]his is particularly true where, as here, the officer is on duty.” Id.
We do not find the Applewhite case to be controlling in the instant case, however. Instead, we find the Louisiana Supreme Court’s decision in Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, to be more relevant to the instant situation. In Baumeister the Supreme Court granted writs “to determine whether the court of appeal correctly held a hospital vicariously liable for the sexual battery committed by one of its supervisors upon a co-employee during working hours on the hospital’s premises.” 95-2270, p. 1, 673 So.2d at 995.
In discussing the law applicable to an employer’s vicarious liability for the torts of employees, the Supreme Court stated:
|9The law in this area is clear that an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment. Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226. The course of employment test refers to time and place. Benoit v. Capitol Manufacturing Co., 617 So.2d 477, 479 (La.1993). The scope of employment test examines the employment-related risk of injury. Id.
95-2270, p. 3, 673 So.2d at 996.
In Baumeister the Supreme Court stated that “an employer is not vicariously liable merely because his employee commits an intentional tort on the employer’s premises during working hours.” 95-2270, p. 4, 673 So.2d at 997. In determining whether an employee was acting within the course and scope of the employee’s employment, the particular facts of each case must be analyzed. Id.
In Baumeister the plaintiff, a clinical technician, and the defendant, the night nursing supervisor, worked the 3 p.m. to 11 p.m. shift at a hospital. The plaintiff was on her break when she went to the basement of the hospital to get a soda. She then went to the nurse’s lounge on the second floor of the hospital building, sat down, and began reading a magazine. The defendant then entered the lounge, turned off the light, jumped on top of the plaintiff, and sexually assaulted her.
The Supreme Court analyzed the facts in Baumeister using the following four factors, set out in LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974), to determine if the hospital were vicariously liable for the actions of the nursing supervisor:
(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee’s duties;
(3) whether the act occurred on the employer’s premises; and
(4) whether it occurred during the hours of employment.
| in95~2270, p. 8, 673 So.2d at 999.
The Supreme Court in Baumeister found that the last two factors were present but that the first two factors were not. The Supreme Court found that the likelihood that a nursing supervisor would find an employee alone in the nurses’ lounge and sexually assault the employee was not a risk attributable to the supervisor’s duties, because a nursing supervisor’s responsibilities do not include “sexually oriented physical contact with a co- *305 employee.” 95-2270, p. 9, 673 So.2d at 999. Additionally, the Supreme Court did not find that the nursing supervisor’s actions were employment rooted. The Supreme Court found that unlike the cases where a supervisor’s duties, such as disciplining or threatening to discipline a subordinate employee, may lead to an intentional tort, the sexual assault in Bau-meister was entirely extraneous to the employer’s interests. Given the facts in Baumeister, the Supreme Court found that “as a matter of law the uncontro-verted facts do not support a finding of vicarious liability.” 95-2270, p. 10, 673 So.2d at 1000.
Applying the four factors used in the Baumeister analysis to the instant case, it is clear that the same two factors present in the Baumeister case, i.e., that the sexual assault occurred during the defendant’s hours of employment and that the assault occurred on the employer’s premises, are present in the instant case. Similarly, the other two factors are absent as they were in Baumeister. We do not find that Mr. Chaisson’s alleged actions were primarily employment rooted. Clearly, not only were they completely extraneous to Mr. Chaisson’s counseling duties at the Center, they were also an egregious violation of the ethical standards applicable to a substance abuse counselor. Finally, Mr. Chaisson’s alleged actions |nwere in no way incidental to the performance of his duties as a counselor at the Center. His duties certainly did not include sexually assaulting a client.
Based on the foregoing analysis, we hold that the trial court’s finding that the alleged sexual assault by Mr. Chaisson was not within the course and scope of his employment was neither manifestly erroneous nor clearly wrong. Therefore, we find that as a matter of law the facts in the instant case fail to establish any vicarious liability on the part of the Center.
For the foregoing analysis, we have assumed that Mr. Chaisson was an employee of the Methodist Partnership. Methodist Partnership, however, has argued that Mr. Chaisson was an independent contractor rather than an employee and that, therefore, it could not be vicariously liable for his actions. It is not necessary for us to determine whether Mr. Chaisson was a direct employee of the Center or an independent contractor working at the Center. Because Mr. Chaisson’s actions could never be deemed to be within the purview of his duties as a counselor, it is not necessary for us to determine whether Mr. Chaisson was an employee of the Methodist Partnership or an independent contractor. Methodist Partnership would not be liable for Mr. Chaisson’s actions in either case.
Negligent Hiring and Supervision
Ms. Sanborn has also argued that even if Mr. Chaisson were not acting within the course and scope of his employment, the Methodist Partnership was negligent in hiring, retaining, and supervising Mr. Chaisson and, therefore, liable for the damages he caused her to suffer. This argument is based on the fact that he was allegedly terminated from his employment at West Jefferson, because he violated the hospital’s policy regarding contact between counselors and former clients by having lunch with a former client, who was a female. Ms. Sanborn has |12asserted that because of this, Methodist Partnership should have known that Mr. Chaisson had a propensity for improper behavior toward female clients.
Mr. Chaisson testified that he had resigned from his employment at West Jefferson, after he had invited a former client, who was a female, to have lunch with him to discuss some problems she was having. *306 He testified that he later learned that it was the hospital’s policy to discourage counselors from interacting with former clients outside of the counseling setting. Mr. Chaisson testified that because he disagreed with this policy, he resigned from his job at West Jefferson.
There is absolutely nothing in the record to suggest that anything untoward occurred at the luncheon meeting between Mr. Chaisson and his former client. We find that Ms. Sanborn has completely failed to meet her burden of proof on this issue. We affirm the trial court’s judgment that there was no evidence to support Ms. Sanborn’s claim that the Methodist Partnership negligently hired, retained, or supervised Mr. Chaisson.
CONCLUSION
Based on the foregoing discussion, we affirm the judgment of the trial court.
AFFIRMED.

. Originally, Mr. Chaisson was identified as "Karl LNU” to indicate that Mr. Chaisson's last name was unknown at the time suit was filed.

. There is nothing in the record to indicate the disposition of the case against Behavioral Services, Inc., Dr. Deutseh, or Dr. Roskind’s estate. Presumably, these parties were partners of the Methodist Partnership.

. Mr. Chaisson has not appealed the judgment against him.