CLARENCE E. McMANUS, Judge.
| ^Defendant, John J. McMullen Associates, Inc., (hereinafter “JJM”), appeals from a judgment rendered against it and in favor of plaintiffs, Kenneth Porter and Pamela Porter. For the reasons that follow, we affirm the judgment of the trial court.
Kenneth Porter and his wife Pamela filed this suit for injuries sustained when Mr. Porter was struck in the face by Philip Fulkerson, an employee of JJM. Fulker-son, along with his homeowner’s insurer, settled with Porter prior to trial, leaving JJM as the only defendant.
This matter went to a jury trial. At its conclusion, the jury found that Fulkerson caused Porter’s damages and that he was in the course and scope of his employment at the time of the incident, and they awarded general and specific damages of $1,845,442.00. The jury also found that Pamela suffered loss of ^consortium and they awarded damages of $50,000. Finally, the judgment ordered Porter to satisfy the U.S. Department of Labor from the proceeds of the judgment.
JJM appeals the jury’s finding that it was liable for the actions of Mr. Fulkerson.
The incident at issue occurred in March of 2005. At that time, Mr. Porter was a civilian employed by the Navy, involved in what was called an LPD contract for the designing of a ship. The location of the project was on the second floor of the UNO building adjacent to Avondale shipyard. On the second floor were the various entities that were involved in the project; Navy personnel, the contractors, subcontractors and designers, their employees and other entities. As Mr. Porter described it at trial, “It consisted of a multitude of people of trades, and capabilities, and contractors. That is, all of the support services that the [N]avy had, support contractors, the contractor Northrop Grumman Avondale personnel, as well as Navy personnel, of ourself [sic], locally, and Navy personnel from Washington D.C., and various other locations.”
The physical design of the working area was cubicles, low enough for the individuals to communicate with each other if necessary. Mr. Porter stated that the purpose of creating the work environment in such a manner was so that it could speed up the work process since all the personnel needed would be immediately accessible. He further stated that another purpose was to create camaraderie between the various entities involved so that the persons would feel more comfortable with sharing. Mr. Porter stated that “it was a *644 very functional environment, a lot of socializing, a lot of talking.”
Phillip Fulkerson was an employee of JJM, one of the subcontractors involved in the project. On the date of the incident at issue, he arrived at work and was proceeding to his desk when he saw Gary Lejeune, an employee of another ^subcontractor, with whom he was acquainted, in Mr. Porter’s cubicle. Mr. Porter was seated at his desk and Mr. Lejeune was sitting in a chair across from him. Fulkerson entered the cubicle to talk to Mr. Lejeune and he perched on the edge of Porter’s desk. As some point in the conversation, he went to pat Porter in a style similar to the lead character on the television show, “The Sopranos.” However, in moving Fulkerson accidentally slipped off the desk and ended up slapping Mr. Porter much harder than he intended.
Mr. Porter was talking when the accident occurred and the slap caused injury to his jaw, resulting in TMJ issues. It also aggravated a non-symptomatic degenerative cervical disc disease, so that Mr. Porter now suffers from debilitating headaches. In addition, it caused an inner ear “concussion” which causes him to suffer vertigo. Finally there is a psychogenic component to his injury. One doctor explained it as a heightened response to injury. However, all the doctors who examined him found no evidence of malingering. Mr. Porter was found to be permanently disabled as a result of the injuries suffered.
The sole issue in this appeal is whether the jury erred in finding that Fulkerson was within the course and scope of his employment when the accident occurred.
“Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” LSA-C.C. art. 2820. The law in this area is clear that an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment., Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 996. The course of employment refers to time and place. The scope of employment test examines the employment-related risk of injury. Cote v. City of Shreveport, 46,571 (La.App. 2 Cir. 9/21/11), 73 So.3d 435, 439. |sFor the employer to be vicariously liable, the tortious conduct of the employee must be “so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer’s business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer’s interest.” Id. at 439. However, the employee’s conduct need only be reasonably incidental to the performance of the employee’s official duties, and need not be exclusively employment rooted. Wright v. Skate Country, Inc., 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874, 879, unit denied, 99-2272 (La.11/5/99), 750 So.2d 194.
In Russell v. Noullet, 98-0816 (La.12/1/98), 721 So.2d 868, 871-2, our Supreme Court set forth our standard of review:
The question of whether an employee’s tortious conduct was sufficiently employment-related that the court should impose vicarious liability upon the employer is a mixed question of fact and law, and the trial court’s resolution of that question is entitled to great deference on review by the court of appeal under the manifest error standard. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98); 708 So.2d 362. Nevertheless, the reviewing court must determine that the record contains sufficient support in the evidence, viewed in the light most favorable to the party that prevailed in the trial court, for a rational trier of fact to have found that the tor-tious conduct was or was not employ *645 ment-related. The reviewing court can only reverse a lower court’s factual findings when (1) the record reflects that a reasonable factual basis does not exist for the finding of the trial court and (2) the record establishes that the finding is clearly ■wrong. Baumeister [v. Plunkett, 95-2270 (La.5/21/96); 673 So.2d 994], 998.
In this case, both Mr. Porter and Mr. Fulkerson testified that their employment location was set up in a way to facilitate camaraderie between all the different parties that were collaborating on the ship design process. He stated that the second floor was set up open air, with cubicles, to allow exchange among the different individuals. Mr. Fulkerson further stated that physical contact was not discouraged, and there was a lot of hand shaking and back patting. While Mr. Fulkerson did state that he entered Mr. Porter’s cubicle for the purpose of | fiSocializing with the individuals located therein, the jury could have reasonably concluded that his actions served the purpose, at least in part, of creating this camaraderie, which was the aim of the employers designing the work space, or that his actions furthered the aim of his employer in satisfying the goals of the entity that his employer contracted with.
Considering that evidence presented, we cannot say that the jury was manifestly erroneous in finding that Mr. Fulkerson was within the course and scope of his employment when he injured Mr. Porter and that John J. McMullen Associates, Inc. was responsible for the damage caused by Fulkerson. Accordingly we affirm the decision of the trial court. All costs are assessed against appellant.

AFFIRMED