STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 0250

ANASTASSIA TROMBETTAS

VERSUS

ANGELA COX WILLIAMS, AMANDA DESORMEAUX,
AND DONNA NEVELS

Judgment Rendered: **SEP 1 5 2023**

* * * * *

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 2022-11833

The Honorable Reginald T. Badeaux III, Judge Presiding

* * * * *

Richard L. Ducote
Covington, Louisiana

Attorney for Plaintiff/Appellant
Anastassia Trombettas

David S. Daly
Elliot M. Lonker
New Orleans, Louisiana

Attorneys for Defendant/Appellee
Angela Cox Williams

Donna Nevels
Confidential address

Defendant/Appellee
Self-represented litigant

Gus A. Fritchie, III
New Orleans, Louisiana

Attorney for Defendant/Appellee
Amanda Desormeaux

* * * * *

BEFORE: WELCH, HOLDRIDGE, AND WOLFE, JJ.

**HOLDRIDGE, J.**

Plaintiff, Anastassia Trombettas, appeals from a trial court judgment granting a motion for summary judgment in favor of a defendant, Angela Cox Williams, and dismissing her claims against Ms. Williams with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 5, 2022, Ms. Trombettas filed suit against Ms. Williams, Amanda Desormeaux, and Donna Nevels, alleging that Ms. Williams employed Ms. Desormeaux and Ms. Nevels in her law practice. Ms. Williams represented Ms. Trombettas' former husband, John Nevels, in his divorce litigation against Ms. Trombettas.[1] Ms. Desormeaux was the daughter of Mr. Nevels and Ms. Nevels, who were formerly married.

In her petition, Ms. Trombettas alleged that Ms. Desormeaux and Ms. Nevels tortiously acted to assist Ms. Williams in her legal representation of Mr. Nevels while within the course and scope of their employment with her. Specifically, Ms. Trombettas alleged that on January 4, 2020, Ms. Desormeaux and Ms. Nevels committed identity theft by assuming Ms. Trombettas' identity and creating a Credit Karma account in her name, using her social security number, without her knowledge or consent. According to Ms. Trombettas, they wanted to invade her privacy and access her confidential credit reports and financial information. She alleged that they gave the information they obtained to Ms. Williams to use in Mr. Nevels' divorce litigation against her from January 4, 2020 through February 14, 2021.

---

[1] We note that Ms. Trombettas was identified as "Anastassia Trombettas Nevels" in the divorce litigation.

2

Ms. Trombettas alleged that the defendants' conduct constituted a tortious invasion of privacy and a violation of the Fair Credit Reporting Act. She alleged that Ms. Williams was also liable for negligently supervising her employees pursuant to La. C.C. art. 2320. Ms. Trombettas sought damages for physical and emotional distress, financial loss, exposure to further identity theft, and loss of privacy.

Ms. Nevels answered the petition as a self-represented litigant, alleging that Ms. Williams was never her employer or supervisor. She also alleged that she had no knowledge of any such Credit Karma account other than the allegations set forth in Ms. Trombettas' petition.[2]

Ms. Williams filed a motion for summary judgment wherein she contended that she committed no tortious acts against Ms. Trombettas, nor was she vicariously liable for any alleged tortious acts of Ms. Desormeaux or Ms. Nevels.[3]

Ms. Desormeaux answered the petition on September 7, 2022, and admitted that she checked Credit Karma for outstanding accounts in the name of Mr. Nevels and Ms. Trombettas due to Mr. Nevels' concerns that Ms. Trombettas had previously opened several credit cards in his name without his knowledge or consent in excess of $20,000.[4]

---

[2] In Ms. Trombettas' appellate brief, she "concedes that [Ms.] Nevels was not actually employed by Ms. ... Williams, but that her email address was the one used by Ms. Desormeaux to create the fake Credit Karma account in Ms. Trombettas' name."

[3] We note that in Ms. Williams' summary judgment motion, she sought attorney's fees and costs incurred in defending the suit, and she cited La. C.C.P. art. 863 in her memorandum supporting the summary judgment motion. However, the rule to show cause order setting the matter for hearing referred to the summary judgment motion and the dismissal of Ms. Trombettas' claims against Ms. Williams. It did not refer to attorney's fees and costs, nor was this issue raised at the summary judgment hearing.

[4] In her answer, Ms. Desormeaux admitted that she was employed by Ms. Williams, and she denied that Ms. Williams had any knowledge of the Credit Karma account until she was served with Ms. Trombettas' petition. She also denied the allegations that Ms. Nevels worked for Ms. Williams and that Ms. Trombettas sustained any damages.

3

Ms. Trombettas responded to the summary judgment motion with an objection to the consideration of and a motion to strike Ms. Williams' affidavit. She also filed an opposition to the summary judgment motion, wherein she contended that there were genuine issues of material fact as to whether Ms. Desormeaux's actions were performed in her capacity as an employee of Ms. Williams and whether they were closely connected in time, place, and causation to employment duties.

The trial court held a hearing wherein it granted Ms. Williams' summary judgment motion. In granting the motion, the trial court noted that Ms. Desormeaux stated her motive and testified that her actions were neither employment-related nor incidental to her employment duties. The trial court signed a judgment on November 15, 2022, granting Ms. Williams' motion for summary judgment and dismissing the claims brought against her by Ms. Trombettas with prejudice.[5]

Ms. Trombettas appeals from the judgment. On appeal, Ms. Trombettas contends that the trial court erred in denying her objection to the police reports attached to Ms. Williams' affidavit supporting her motion for summary judgment. She also contends that the trial court erred in granting Ms. Williams' motion for summary judgment and dismissing the suit with prejudice.

Ms. Williams filed a motion to strike portions of Ms. Trombettas' reply brief for a violation of Uniform Rules—Courts of Appeal, Rule 2-12.2(B), for a contempt of court finding under La. C.C.P. art. 222(3), and for an award of costs and attorney's fees incurred in bringing the motion.

---

[5] The trial court designated the judgment as final pursuant to La. C.C.P. art. 1915, but the designation was unnecessary as the judgment dismisses a party from the suit and is therefore final pursuant to La. C.CP art. 1915(A)(1). See **Liberty Mutual Fire Insurance Co. v. Harris**, 2022-0429 (La. App. 1 Cir. 11/4/22), 355 So.3d 628, 632 n.3, writ denied, 2022-01747 (La. 2/7/23), 354 So.3d 671

4

## SUMMARY JUDGMENT

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(3); **Lucas v. Maison Insurance Co.**, 2021-1401 (La. App. 1 Cir. 12/22/22), 358 So.3d 76, 83-84.

The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. See La. C.C.P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (*per curiam*). After an adequate opportunity for discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).[6]

On a motion for summary judgment, the initial burden of proof rests with the mover. See La. C.C.P. art. 966(D)(1); **Lucas**, 358 So.3d at 84. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential

---

[6] The motion for summary judgment at issue on this appeal was filed and decided under La. C.C.P. art. 966 prior to its amendment by 2023 La. Acts No. 317, § 1, and 2023 La. Acts No. 368, § 1, which became effective on August 1, 2023.

5

elements of the adverse party's claim, action, or defense be negated. Instead, after meeting her initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. See La. C.C.P. art. 966(D)(2).[7]

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether there is a genuine issue of material fact. **Collins v. Franciscan**

---

[7] We note that La. C.C.P. art. 966(D)(2) has been amended by 2023 La. Acts No. 317, § 1, to read as follows, with the changes emphasized:

> The court **shall** consider only those documents filed **or referenced** in support of or in opposition to the motion for summary judgment **but shall not consider any document that is excluded pursuant to a timely filed objection**. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing **whether the court sustains or overrules the objections raised.**

(Emphasis added.)

**Missionaries of Our Lady Health System, Inc.**, 2019-0577 (La. App. 1 Cir. 2/21/20), 298 So.3d 191, 194, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Id.** at 194-95. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. **Id.** at 195.

Summary judgment is seldom appropriate for determinations based on the subjective facts of intent, motive, malice, good faith, or knowledge. See **Jones v. Estate of Santiago**, 2003-1424 (La. 4/14/04), 870 So.2d 1002, 1006. These subjective facts call for credibility evaluations and the weighing of testimony. **Id.** A trial court cannot make credibility decisions on a motion for summary judgment. **Monterrey Center, LLC v. Education Partners, Inc.**, 2008-0734 (La. App. 1 Cir. 12/23/08), 5 So.3d 225, 232. Furthermore, the circumstantial evidence usually necessary for proof of motive or intent requires the trier-of-fact to choose from competing inferences, a task not appropriate for a summary judgment ruling. **Irving v. Katie Santo, Inc.**, 2018-1619 (La. App. 1 Cir. 6/13/19), 2019 WL 2609035 at *5 (unpublished); **Louisiana AG Credit, PCA v. Livestock Producers, Inc.**, 42,072 (La. App. 2 Cir. 4/4/07), 954 So.2d 883, 891, writ denied, 2007-1146 (La. 9/14/07), 963 So.2d 1001.

## TORT LIABILITY

In determining whether the trial court erred in granting Ms. Williams' summary judgment motion, the court must consider whether she was vicariously

liable in accordance with La. C.C. art. 2320.[8] Louisiana Civil Code article 2320 provides that "employers are answerable for the damage occasioned by their servants ... in the exercise of the functions in which they are employed." The Louisiana Supreme Court has adopted a four-factor standard in determining an employer's vicarious liability for an employee's intentional torts. See **Baumeister v. Plunkett**, 95-2270 (La. 5/21/96), 673 So.2d 994, 996-97 (relying on **Lebrane v. Lewis**, 292 So.2d 216, 218 (La. 1974)). The four factors are as follows: (1) whether the tortious act was primarily employment-rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. **Baumeister**, 673 So.2d at 996-97. Although all four factors are not required for vicarious liability, an employer is not vicariously liable merely because his employee commits an intentional tort on the employer's premises during working hours. **Id**. at 997. **Baumeister** contains further language that is helpful in this analysis, providing that employment-rooted conduct should be contrasted from conduct that is motivated by purely personal considerations entirely extraneous to the employer's interest. **Id**. at 997.

## SUMMARY JUDGMENT EVIDENCE

Ms. Williams' summary judgment motion was supported by her affidavit and the affidavits of Ms. Nevels and Ms. Desormeaux.[9] In her affidavit, Ms. Desormeaux stated that she was employed by Ms. Williams and Ms. Williams' law

---

[8] Ms. Trombettas in her appellate brief conceded that Ms. Williams was not personally involved in the identity theft and that Ms. Williams' only liability would stem from the employment of Ms. Desormeaux under La. C.C. art. 2320.

[9] Ms. Nevels' affidavit reiterated the allegations in her answer that she never worked for Ms. Williams and that she was unaware of the Credit Karma account until suit was filed.

8

office as a part-time receptionist and legal assistant from February of 2018 to May of 2021. Ms. Desormeaux stated:

> In approximately late 2019, I created a Credit Karma account in the name of [Ms.] Trombettas, who was my step mother at the time. I did not create this account while working and did this after hours at my house and without the knowledge of or instruction of [Ms. Williams and the law office] or anyone else associated with the law office....

She then stated that to create the account she used the email address containing the name of her mother, Ms. Nevels, who had no knowledge of the email account or the Credit Karma account and who had never worked at Ms. Williams' law office. Ms. Desormeaux stated that she did not tell Ms. Williams or the law office that she created the Credit Karma account. She concluded her affidavit by stating, "[t]hat the actions I took in creating this account and gathering information from it were in my capacity as the daughter of [Mr.] Nevels not in my capacity as an employee of [Ms. Williams] or her law firm."

Ms. Williams submitted her affidavit wherein she stated that she was an attorney, a family law specialist, and the principal and owner of the law office "Angela Cox Williams and Associates." Ms. Williams stated that Ms. Desormeaux worked for her law firm as a part-time receptionist and legal assistant from February of 2018 until May of 2021.

In her affidavit, Ms. Williams stated that she never asked or instructed Ms. Desormeaux to open any Credit Karma account in Ms. Trombettas' name, nor did she discuss the Credit Karma account with Ms. Desormeaux or have any knowledge of it until after the filing of a disciplinary complaint by Ms. Trombettas and Ms. Trombettas' counsel in March of 2022. According to Ms. Williams, she notified Ms. Trombettas and Ms. Trombettas' counsel before the suit was filed that she had no knowledge of or involvement with the opening of the Credit Karma account prior to learning of the allegations through receipt of the disciplinary complaint filed by

9

them in March of 2022. She stated that she obtained and reviewed a St. Tammany Parish Sheriff's Incident Report dated May 3, 2021, and attached to the affidavit, which stated that the Credit Karma account was opened under an email address for Ms. Nevels and that no charges were to be brought as no crime had occurred. She concluded her affidavit by stating that documentation attached to the disciplinary complaint indicated that the Credit Karma account was opened on the afternoon of January 4, 2020, at which time she was on a family vacation at Universal Studios in Orlando, Florida.

In opposition to the summary judgment motion, Ms. Trombettas attached the following evidence: Ms. Williams' responses to her request for production of documents, Ms. Williams' deposition, the divorce petition filed by Mr. Nevels against Ms. Trombettas, Ms. Trombettas' objection to the hearing officer conference report in the divorce litigation, Ms. Desormeaux's deposition, a stipulated judgment in the divorce proceedings, and her affidavit.

In the answers to the request for production, Ms. Williams objected on the basis of attorney-client and/or work-product privilege to Ms. Trombettas' request for production of Ms. Desormeaux's entire personnel file and copies of all emails, postal mail, memoranda, text messages, and all other correspondence between Ms. Desormeaux and Ms. Williams or Jesmin Finley involving any case as to which Ms. Trombettas was a party.[10] She also objected to requests for records of vouchers and expense reimbursements for Ms. Desormeaux, any termination and disciplinary filings with the Louisiana Workforce Commission as to Ms. Desormeaux, or unemployment compensation claims on the basis that they sought personal, private information that was irrelevant to the proceedings. Ms. Williams also stated that she also had no such documents.

---

[10] Ms. Trombettas did not identify Ms. Finley in the request for production.

10

In Ms. Williams' deposition, she testified that Ms. Desormeaux worked for her from 2017 or 2018 until May of 2021 as a receptionist. According to Ms. Williams, Ms. Desormeaux's duties were to answer the phone, file, run errands, and make corrections that were not "too substantive." Ms. Williams testified that financial issues were involved in Mr. Nevels' litigation against Ms. Trombettas. She testified that there was a hearing in the matter on January 9, 2020, involving spousal support, utility payments, and some other financial issues and that a stipulated judgment was signed by the trial court on January 16, 2020. Ms. Trombettas' counsel asked Ms. Williams if January 9, 2020, was five days after the date on which Ms. Desormeaux opened up the Credit Karma account (on January 4, 2020), to which Ms. Williams replied affirmatively, adding "when I was in Universal in Orlando with my kids" on vacation. She agreed that she propounded discovery to Ms. Trombettas seeking any information about any accounts she would have opened in her name. According to Ms. Williams, she found out that Ms. Desormeaux opened a Credit Karma account when she received the disciplinary complaint against her. She had no information on any Credit Karma account in her file, and she had no discussions with Ms. Desormeaux about it. Ms. Williams stated that her insurer was providing Ms. Desormeaux with a defense over Ms. Williams' objection based on the fact that she "had nothing to do with this." When asked if Ms. Desormeaux opened the Credit Karma account for the benefit of Ms. Nevels' divorce litigation, Ms. Williams answered, "I have no idea what her motives were, because I knew nothing about it."

Ms. Trombettas also attached to her opposition pleadings from the divorce litigation, including the October 14, 2022 divorce petition that was filed by Mr. Nevels against her; her October 14, 2022 objection to a hearing officer conference report involving Ms. Trombettas' personal items in the marital home and Mr.

11

Nevels' interim monthly spousal support; and a January 16, 2022 stipulated judgment concerning the former marital home and spousal support, among other items.

Ms. Trombettas attached Ms. Desormeaux's deposition to her opposition to the summary judgment. In her deposition, Ms. Desormeaux testified that she worked for Ms. Williams before 2019 until August of 2021. She stated that she was a secretary and an assistant whose duties included answering the phone, scheduling and filing, picking up lunch, and whatever was asked of her. Ms. Desormeaux replied negatively when asked if she ever did any work from home. She stated that her work hours were from 8:30 until 3:00 mostly every day. According to Ms. Desormeaux, she had no involvement in Mr. Nevels' case other than answering the phone and scheduling things. Ms. Desormeaux testified that Mr. Nevels "would talk to me about what was going on outside of work when he would get frustrated." She stated that she then referred him to Ms. Williams. She replied negatively when she was asked several times if she talked to Ms. Williams about Mr. Nevels' case.

Ms. Desormeaux indicated that she did create a false Credit Karma account in Ms. Trombettas' name using Ms. Trombettas' social security number. She testified that she created the account to check for outstanding debt that could be attributed to Mr. Nevels because he was concerned about it before the divorce was finalized. Ms. Desormeaux stated that Mr. Nevels was concerned because a few years before, Ms. Trombettas "had used his Social Security Number and created accounts in excess of $20,000 in debt." After she created the Credit Karma account, she told Mr. Nevels that she did not see anything that he should be aware of. Ms. Desormeaux replied affirmatively when asked if Mr. Nevels asked her to open the Credit Karma account in Ms. Trombettas' name. According to Ms. Desormeaux, she used an email address that had her mother's name in it for the Credit Karma account. She answered

12

affirmatively when asked if she opened the Credit Karma account from her home using her computer.

Ms. Desormeaux indicated that she did not give Ms. Williams any information about the Credit Karma account, stating that she did not "do it in conjunction for anything with the case." She denied that Ms. Williams had given her and other office workers directives "to go out and find stuff, however you could find it" or had asked or instructed her to create the account. Ms. Desormeaux affirmed that Ms. Williams did not have anything to do with her actions and that she "did this on [her] own at home at night." She answered affirmatively when asked if she was willing to pay whatever damages were due "out of [her] own pocket," without reimbursement from Ms. Williams. She answered negatively when asked if she spoke with Ms. Williams about the Credit Karma account.

Ms. Trombettas also attached her affidavit to her opposition, wherein she stated that she never consented to or authorized anyone to assume her identity and create a Credit Karma account in her name with her social security number.

In reviewing the evidence submitted by Ms. Williams in support of her summary judgment motion, we will consider Ms. Trombettas' first assignment of error in which she argues that the trial court erred in failing to exclude Ms. Williams' affidavit wherein she referred to and attached police reports. Ms. Trombettas filed an objection to the consideration of and a motion to strike Ms. Williams' affidavit.[11] Ms. Trombettas contended that the police reports Ms. Williams referred to and attached to her affidavit were inadmissible hearsay and therefore could not be

---

[11] We note that the use of a motion to strike to object to summary judgment evidence is not appropriate. **Arceneaux v. Arceneaux**, 2022-0814 (La. App. 1 Cir. 4/3/23), 364 So.3d 529, 536 n.9. Louisiana Code of Civil Procedure article 966(D)(2) requires that any objection to a document filed in support of or in opposition to a motion for summary judgment shall be raised in a timely filed opposition or reply memorandum.

13

considered on the summary judgment motion. She further contended that Ms. Williams' affidavit was not based on personal knowledge, as required by La. C.C.P. arts. 966 and 967. At the hearing on the summary judgment motion, when asked about Ms. Trombettas' objection, the trial court replied that it considered Ms. Williams' affidavit.

The abuse of discretion standard is applicable to the trial court's rulings on objections to documents filed in support of or in opposition to a summary judgment motion that are raised by a party in a timely filed opposition or reply memorandum in accordance with La. C.C.P. art. 966(D)(2). **Lucas**, 358 So.3d at 88-89.

Under La. C.C.P. art. 967(A), an affidavit offered in support of a motion for summary judgment shall be based on personal knowledge, shall set forth facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Hearsay is defined as a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. This court has held that investigative police reports that are not authenticated or sworn to in any way are inadmissible hearsay.[12] See **Lowe v. Noble, L.L.C.**, 2016-1110 (La. App. 1 Cir. 10/17/17), 233 So.3d 28, 37, rev'd on other grounds, 2017-1948 (La. 2/9/18), 235 So.3d 1095 (*per curiam*); **Hickman ex rel. Hamlin v. Chevron U.S.A., Inc.**, 2007-0080 (La. App. 1 Cir. 12/21/07), 2007 WL 4465694 at *4 n.1 (unpublished) (citing La. C.E. art.

---

[12] While 2023 La. Acts No. 317, § 1, has amended La. C.C.P. art. 966(A)(4)(a) to allow "certified copies of public documents or public records" to be filed or referenced in support of or in opposition to the summary judgment motion, comment (a) of the 2023 revision comments states, "Objections may be raised in a timely filed opposition or reply memorandum if the content of any document filed in accordance with Subparagraph (A)(4)(a), including any certified copies of public records or public documents, would not be admissible at the trial on the merits."

14

803(8)(b)(i)).  Therefore, the trial court abused its discretion in considering those reports and Ms. Williams' statement about them in her affidavit.  However, the remainder of Ms. Williams' affidavit was properly considered by the trial court.  In our *de novo* review of the motion for summary judgment, we will not consider the police reports or Ms. Williams' statement about them.[13]

In Ms. Trombettas' second assignment of error, she contends that the trial court erred in granting the motion for summary judgment because Ms. Desormeaux's conduct was in the course and scope of her employment for Ms. Williams.  In granting the summary judgment motion, the trial court noted that Ms. Desormeaux admitted that her actions were taken for purely personal consideration, to help her father.  The trial court concluded that Ms. Trombettas could not prove any of the elements in the test for respondeat superior liability under La. C.C. art. 2320.

Ms. Trombettas contends that the evidence shows that Ms. Desormeaux was helping Mr. Nevels, her boss's client, with the financial aspects of his divorce litigation by creating a Credit Karma account to check for the existence of any debt belonging to Ms. Trombettas.  However, in her affidavit, Ms. Desormeaux admitted that she created the Credit Karma account away from Ms. Williams' office on her own computer and after work hours; that she did so as a daughter helping her father; and that Ms. Williams had no knowledge of or participation in her actions.  Ms.

---

[13] We note that Ms. Williams did not object to the evidence filed by Ms. Trombettas in opposition to the motion for summary judgment.  Ms. Trombettas submitted responses to the request for production, but those items are not listed as proper summary judgment evidence under La. C.C.P. art. 966(A)(4).  Additionally, Ms. Trombettas attached pleadings from another suit without authenticating them.  While the list of items in La. C.C.P. art 966 that are admissible in a summary judgment proceeding does include pleadings, those pleadings do not include pleadings from a different suit in the same parish.  See **Mills v. Smith**, 2019-812 (La. App. 3 Cir. 4/8/20), 2020 WL 1702287, *4 (unpublished).  However, without an objection, we must consider the evidence, but it has no evidentiary value.  See **Lucas**, 358 So.3d at 92.

15

Williams in her affidavit corroborated her lack of knowledge and participation in the creation of the Credit Karma account. The evidence submitted by Ms. Trombettas to oppose the summary judgment motion corroborated Ms. Williams' and Ms. Desormeaux's affidavits. Ms. Desormeaux testified in her deposition that she created the Credit Karma account at her house on her personal computer during non-work hours and that Ms. Williams did not know or participate in her actions.[14] The trial court correctly granted Ms. Williams' motion for summary judgment as there was no evidence that she was vicariously liable for any conduct by Ms. Desormeaux because none of the four factors for finding an employer liable for an employee's intentional tort existed. See **Baumeister**, 673 So.2d at 996-97.

## MOTION TO STRIKE

Turning to the motion to strike, Ms. Williams seeks to strike portions of Ms. Trombettas' reply brief. The reply brief contains a section wherein Ms. Trombettas likened Ms. Williams to a demonic entity from the movie **The Exorcist** who forced Ms. Desormeaux to lie about opening the Credit Karma account to protect Ms. Williams. Uniform Rules—Courts of Appeal, Rule 2-12.2(B) states:

> The language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution. Any violation of this Subsection shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned.

---

[14] Ms. Trombettas relies on several cases to support her vicarious liability claim that are distinguishable. See **Felps v. Landmark Event Staffing Services, Inc.**, 2021-1370 (La. App. 1 Cir. 8/31/22), 349 So.3d 78, 82-85; **Berthelot v. Indovina**, 2021-0517 (La. App. 1 Cir. 12/22/21), 340 So.3d 119, 124-26; and **Garcia v. Lewis**, 50,744 (La. App. 2 Cir. 6/22/16), 197 So.3d 738, 743-44, writ denied, 2016-1382 (La. 11/7/16), 205 So.3d 891. In those cases, the movers for summary judgment provided evidence from which it could be concluded that the tortfeasor employees' actions were employment-related, whereas in this case, the tortfeasor defendant in her answer, deposition, and affidavit stated unequivocally that her actions were not employment-related, which was consistent with Ms. Williams' testimony.

16

In opposition to Ms. Williams' motion to strike, Ms. Trombettas' counsel filed a brief that included the language at issue along with a lengthy attachment. Ms. Trombettas' counsel contended that "nothing was improper in [Ms. Trombettas'] **The Exorcist** metaphor, which only colorfully emphasized the following points in this case...." Counsel attached to his response two articles discussing references to movies in judicial opinions: Douglas E. Abrams, <u>References to Movies in Judicial Opinions and Written Advocacy, Part 1</u>, 75 J. Mo. B. 244 (2019), and Douglas E. Abrams, <u>References to Movies in Judicial Opinions and Written Advocacy, Part 2</u>, 75 J. Mo. B. 297 (2019).

This court is concerned that Ms. Trombettas' counsel, Richard Ducote, fails to realize how unprofessional and inappropriate comparing a defendant to Satan and using **The Exorcist** as a metaphor is, and instead, continues to reassert the reference along with a lengthy and condescending explanation of what a metaphor is. Notably, **The Exorcist** is not included in the extensive list of movies referred to in the articles on judicial opinions that Mr. Ducote submitted. Moreover, Mr. Ducote previously has used inappropriate language in an appellate brief, which this court struck on a motion to strike, and condemned the unprofessional conduct evidenced in that brief. <u>See</u> **Stroscher v. Stroscher**, 2001-2769 (La. App. 1 Cir. 2/14/03), 845 So.2d 518, 527-28.

Based on our review of the motion and Ms. Trombettas' reply brief, we grant the motion to strike Section A of Ms. Trombettas' reply brief, which is entitled "Ms. Desormeaux's 'admission.'" Ms. Trombettas' allegations involving the occult are potentially damaging to Ms. Williams' reputation and are inappropriate, offensive,

and insulting. We exercise our discretion and will not hold counsel in contempt.[15] See **In re Interdiction of DeMarco**, 2009-1791 (La. App. 1 Cir. 4/7/10), 38 So.3d 417, 432. In the motion to strike, Ms. Williams requested an award of attorney's fees and costs. While we are granting the motion to strike, we are unable to award the attorney's fees incurred in bringing the motion.[16] See **Coastal Industries, LLC v. Arkel Constructors, LLC**, 2021-0906 (La. App. 1 Cir. 9/1/22), 350 So.3d 912, 924, writ denied, 2022-01489 (La. 11/22/22), 350 So.3d 500 ("[A]ttorney's fees are not recoverable unless authorized by statute or contract.") We will award Ms. Williams the costs incurred in bringing the motion to strike.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of November 15, 2022, granting Angela Cox Williams' motion for summary judgment and dismissing the claims brought against her by Anastassia Trombettas with prejudice. Angela Cox Williams' motion to strike is granted as to Section A of Ms. Trombettas' reply brief, which is entitled "Ms. Desormeaux's 'admission.'" Costs of this appeal and those

---

[15] Louisiana Code of Civil Procedure article 222 states in pertinent part:

> A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record.
>
> Any of the following acts constitutes a direct contempt of court:
>
> ...
>
> (3) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a pleading, brief, or other document filed with the court in irrelevant criticism of another attorney or of a judge or officer of the court; ...

[16] Louisiana Revised Statutes 13:4611(1)(g) provides in pertinent part that "Except as otherwise provided for by law: (1)[T]he courts of appeal ... may punish a person adjudged guilty of contempt of court therein, as follows: ... (g) The court may award attorney fees to the prevailing party in a contempt of court proceeding provided for in this Section." Because this court is not holding Ms. Trombettas' counsel in contempt, we will not award attorney's fees incurred in bringing the motion to strike.

18

incurred in Angela Cox Williams' motion to strike are assessed to Anastassia Trombettas.

**MOTION TO STRIKE GRANTED; JUDGMENT AFFIRMED.**